IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NAVDEEP BRAR,

                            Petitioner,                        OPINION and ORDER

   v.

                                                  17-cv-819-wmc

CHIP MEISTER,

                            Respondent.

---

In 2015, petitioner Navdeep Brar was convicted of operating a motor vehicle while intoxicated ("OWI") in two separate incidents in two different Wisconsin Counties, both times in violation of Wis. Stat. § 346.63(1)(a). *State v. Brar*, Case No. 2014CT776 (Dane Cty. Cir. Ct. Apr. 3, 2015); *State v. Brar*, Case No. 2014CT273 (Sauk Cty. Cir. Ct. Sept. 28, 2015). Moreover, on both occasions, Brar had been pulled over, arrested and subjected to a blood test. In the Dane County case, Brar received a sentence of 110 days in jail; and in the Sauk County case, Brar received a sentence of 45 days in jail, to run consecutive to his the Dane County sentence.[1]

After pursuing state appellate relief, Brar filed separate petitions before this court for a writ of habeas corpus under 28 U.S.C. § 2254, challenging both convictions. The court recently rejected his petition with respect to his Dane County conviction in *Brar v. Mahoney*, No. 17-cv-790-wmc (W.D. Wis.). In this case, he challenges the constitutionality of the Sauk County conviction on Fourth and Fourteenth Amendment grounds. Unfortunately for Brar, for reasons largely addressed by the court in its decision

---

[1] Both of his jail sentences were stayed pending resolution of his petitions before this court.

rejecting his petition in Case No. 17-cv-790, Brar's petition must also be denied here. Specifically, Brar's Fourth Amendment claim for relief is barred by *Stone v. Powell*, 428 U.S. 465 (1976), and he procedurally defaulted his other, Fourteenth Amendment claim by failing to raise it before the Wisconsin courts.

## BACKGROUND

### A. Brar's Arrest and Blood Draw

On May 23, 2014, Sauk County Sheriff's Deputy Heimann pulled petitioner Navdeep Brar over after observing problematic driving behavior.   Brar was arrested under suspicion of OWI, and Heimann transported Brar to the Sauk County Jail.   At the jail, Brar consented to a blood draw, and a licensed paramedic working for the Baraboo District Ambulance Service ("BDAS"), Andrew Klock, drew two tubes of blood from Brar's arm. On July 9, 2014, Brar was charged with operating a motor vehicle while under the influence of an intoxicant and operating with a prohibited alcohol concentration.

### B. Brar's Motion to Suppress in State Court

Brar subsequently filed a motion to suppress the results of his blood test, arguing that the state drew his blood in a constitutionally unreasonable manner.   To begin, because he is anemic, he asserted that it was unreasonable for Klock, an EMT, to perform the blood draw in a non-medical jail setting.   Brar also argued that the EMT was not authorized to conduct the blood draw under Wis. Stat. § 343.305(5)(b), which sets forth the qualifications of individuals who may administer blood draws.   More specifically, Brar

argued that Klock was not authorized to conduct the blood draw under the statute because he neither acted "under the directed of a physician," nor was Klock an "other medical professional authorized to draw blood."

The circuit court held two hearings on Brar's suppression motion.  The first took place on December 15, 2014, before Sauk County Circuit Court Judge James Evenson. During that hearing, Officer Heimann and EMT Klock both testified about the blood draw. Heimann testified that he took Brar into the blood draw room at the jail, which he described as approximately eight feet by eight feet and containing the jail's Intoximeter (used for breath testing).  Heimann testified that it was the responsibility of jail staff to clean the room, and when he brought Brar into the room, he did not observe any visible dirt or blood in the room, although he did not perform any additional cleanliness checks before Brar's blood draw.  Finally, Heimann testified, Brar informed him that he had anemia and was on medication for that condition, yet still consented to the blood draw. (Dkt. #16-9, at 17, 20.)

Andrew Klock testified that he was a paramedic and a supervisor for BDAS, and he had been a licensed paramedic in the State of Wisconsin for the past seven years before Brar's blood draw.  Klock did not testify whether he had received additional state certification related to blood draws; instead, Klock testified that he was authorized to draw blood by BDAS's medical director, Dr. Manual Mendoza, who wrote in a letter dated August 21, 2009, that all of his EMT-Paramedics and EMT-Intermediate Technicians were acting under his physician license and had completed extensive training regarding the

procedures and legalities of obtaining blood draws.[2]   Knock also testified that Dr. Mendoza had to sign off on all of the written protocols or procedures for a blood draw at the jail.   Although he could not answer whether Dr. Mendoza had ever been to the Sauk County Jail's blood draw location, Klock further testified that he followed the written protocols and procedures in drawing Brar's blood, and he detailed how he cleansed the blood draw area on the skin, as well as described the room in which blood draws take place at the Sauk County Jail.   (Dkt. #16-9, at 34-35, 41-42.)   In response to questions about the blood draw room in particular, Klock described the room as "fairly clean," "pretty well-maintained," and on some days, "cleaner" than a hospital.   (*Id.* at 35.)

At the same time, Klock acknowledged that he was not responsible for cleaning the room, and generally does not ask people whether they have medical conditions or if they are on medication before conducting a blood draw.   With respect to Brar's blood draw in particular, Klock could not remember whether Officer Heimann told him anything about Brar's medical condition before his blood draw, but he testified that he still would have conducted the blood draw even if he had been informed of Brar's anemia.   (*Id.* at 36.)   On cross-examination, Brar's attorney also asked Klock whether a health problem (such as a heart condition) might cause him *not* to draw blood, and Klock could not think of a condition that would prevent him from drawing blood at the jail.   (*Id.* at 39.)

---

[2] The State offered into evidence a copy of this letter, although Brar objected to its admission as hearsay, arguing the importance of Dr. Mendoza testifying live.  The circuit court overruled the objection, however, apparently admitting the letter as the basis of Klock's belief that he was authorized to conduct blood draws, rather than the truth of the matter asserted.   (Dkt. #16-9, at 31-32.)

After being served with a subpoena to testify by defendant, Dr. Mendoza moved to quash it.   The state joined in that motion, arguing that it was unnecessary for Dr. Mendoza to provide sworn information for the court to resolve the motion.   The circuit court agreed that Mendoza's presence was not required at that hearing.   At a second hearing on the motion to suppress on September 15, 2015, the state again argued that Dr. Mendoza's testimony was not necessary because:   (1) the evidence submitted during the prior hearing sufficiently addressed the reasonableness of the blood draw; and (2) at the time of the blood draw, Wis. Stat. § 343.305(5)(b) permitted a person "authorized to draw blood" to do so, and Klock was authorized to do so.   (Dkt. #16-11, at 3-4.)   Brar objected, insisting that Dr. Mendoza's testimony was relevant to establish that EMT Klock: (1) did not handle the blood draw appropriately, (2) was not acting under Dr. Mendoza's license, and (3) was wrong to assume that there were no health concerns.   After engaging with counsel at some length on this issue -- questioning how Dr. Mendoza's testimony could have a practical impact on the two issues raised in the motion to quash (dkt. #16-10, at 7-11) -- the court ultimately allowed defense counsel to submit further briefing on the issue and moved on to Brar's testimony.

Brar then testified about his anemia condition, stating that he had received emergency treatment, had multiple blood and iron transfusions, and had been told his anemia was a dangerous condition.   Brar testified further that his own concern about his condition prompted him to inform Officer Heimann about his being treated for anemia in the first place.

On September 28, 2015, the circuit court issued a written decision denying Brar's motion to suppress.  (Dkt. #16-6, at 51-52.)  First, the court held that his blood was drawn properly by EMT Klock under Wis. Stat. § 343.305(5)(b).  The court specifically reasoned that:   "Mr. Andrew Klock who drew the blood was a licensed paramedic and also working under the direction of Dr. Mendoza, the medical director of the ambulance service. For both of these reasons, the motion to suppress on this ground is denied."  (*Id*.)  The court further found that Brar's blood was drawn in a reasonable manner, noting that there was "no showing that the blood draw, while being done at the law enforcement center, was unreasonable or otherwise subjected Mr. Brar to any risks." (*Id*. at 52.)   Finally, the court found that Brar consented to the blood draw and formally quashed the subpoena for Dr. Mendoza's testimony.   (Dkt. #16-12, at 8.)

### C.  Brar's Appeal

On December 14, 2015, Brar filed a notice of appeal, raising two issues:   (1) the State failed to prove that Klock met the requirements to draw blood under Wis. Stat. § 343.305(5)(b); and (2) the blood was drawn in a constitutionally unreasonable manner because (a) Brar, as an anemic, could have been endangered by a blood draw not performed in a hospital, and (b) it was not clear that the blood draw room was sufficiently clean. With respect to the "reasonableness" argument in particular, Brar relied on the Fourth Amendment of the United States Constitution.   (Dkt. #16-2, at 34.)   Brar also cited to the Wisconsin Supreme Court's decision in *State v. Bohling*, 173 Wis. 2d 529, 534, 494 N.W.2d 399 (1993), *abrogated on other grounds by Missouri v. McNeely*, 133 S. Ct. 1552

(2013), which set forth the same reasonableness standard adopted by the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 771 (1996).   (Dkt. #16-2, at 33.) While Brar acknowledged that both *Bohling* and *Schmerber* involved *involuntary* blood draws, he specifically honed in on the safety concerns the Supreme Court raised in *Schmerber*, suggesting that greater scrutiny of consent should be required in circumstances in which non-medical personnel performed the blood draw or the draw occurred in a non-medical environment.   (*Id.* (citing *Schmerber*, 384 U.S. at 771-72).)   Finally, Brar argued that the circuit court erred in finding the blood draw reasonable because the State had not (1) submitted evidence (such as Dr. Mendoza's testimony) showing the blood draw room at the jail was sterile or (2) taken any precautions in light of Brar's anemia.   (*Id.* at 35-43.)

On January 12, 2017, after the briefing on Brar's appeal to the Wisconsin Court of Appeals was complete, the Wisconsin Supreme Court issued a decision in *State v. Kozel*, 2017 WI 3, 373 Wis. 2d 1, 889 N.W.2d 423, which addressed nearly the identical issues raised in Brar's appeal:   the reasonableness of a blood draw at the Sauk County jail by an EMT who had been authorized to the conduct the blood draw by virtue of Dr. Mendoza's 2009 letter.   The Wisconsin Supreme Court held that:   (1) the EMT qualified as a "person acting under the direction of a physician" under Wis. Stat. § 343.305(5)(b); and (2) Kozel's blood was drawn in a constitutionally reasonable manner.   *Kozel*, 373 Wis. 2d ¶ 3.

With respect to the reasonableness inquiry, the *Kozel* court accepted that a blood sample is a search, citing *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016), and discussed in detail the United States Supreme Court's guidance in analyzing the

reasonableness of taking a blood draw from a drunk driver set forth in *Schmerber*. 373 Wis. 2d ¶¶ 8-9. Even so, the court rejected Kozel's argument that administration of a blood draw of an EMT in a jail violates *Schmerber* because: (1) "it was not unreasonable for an EMT, as opposed to a physician, to draw Kozel's blood" given his training and lack of evidence of any risk of trauma or pain; (2) the state's failure to introduce specific protocols for drawing blood was not problematic given the EMT's training *and* the fact that his training was followed; and (3) "it was not unreasonable for the blood draw to occur in the non-medical setting of the jail" because there was evidence before the circuit court that the room was as clean as a hospital emergency room and the EMT used a new blood draw kit. *Id.* ¶¶ 44-45.

Given the striking similarities in the facts and issues addressed in *Kozel*, the Wisconsin Court of Appeals asked the parties to address its applicability to *State v. Brar*, No. 2015AP2582-CR (Mar. 9, 2017). (Dkt. #16-5.) Brar attempted to distinguish his circumstances from those addressed in *Kozel*. Not surprisingly, after reviewing *Kozel*, the court of appeals concluded *Kozel* was controlling with respect to Brar's appeal, expressly declining Brar's effort to distinguish somehow his circumstances from Kozel's based on his anemia.

The court of appeals also rejected Brar's reliance on the Supreme Court's statement in *Schmerber* that blood draws conducted by non-medical personnel need to be analyzed to determine whether they involve risks of infection and pain. *Brar*, No. 2015AP2582-CR, dkt. #16-5, at 5. First, the court found the argument moot because Brar had testified that he was not actually harmed by the blood draw. Second, the court explained that:

> although Brar raised the issue of his anemia in the circuit court, he did not present it to the court as a stand-alone reason to suppress the results of the blood draw.   Nonetheless, after considering all evidence and argument presented by the parties, the circuit court determined that Brar's blood draw was not "unreasonable" and did not "otherwise subject[] Mr. Brar to any risks."   Brar fails to provide me with a basis to question this determination. Brar may intend to make one or more additional arguments based on *Schmerber*, but if so I cannot discern what those arguments would be.

*Id.*   Accordingly, the Wisconsin Court of Appeals affirmed the circuit court's judgment.

Brar next filed a petition for review with the Wisconsin Supreme Court, raising the same two issues and arguing more explicitly that the circuit court erred in quashing Dr. Mendoza's subpoena.   That petition was denied.


OPINION

Brar argues that his OWI conviction in *State v. Brar*, 2014CT273 (Sauk Cty. Cir. Ct. Sept. 28, 2015), violated his Fourth Amendment right to a constitutionally reasonable manner and place of a blood test, and that the state violated Brar's Fourteenth Amendment due process rights in granting Dr. Mendoza's motion to quash.

Under Section 2254, a federal district court may grant habeas relief only when a petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   Since Brar will be in custody due to a state judgment, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, governs his petition.   28 U.S.C. 2254(d).   Section 2254(d) severely restricts a federal district court's review of a state judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication
of the claim—

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented
in the State court proceeding.

28 U.S.C. § 2254(d); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004). In

Brar's circumstances, however, the court cannot reach this question for either of his claims.

## I.      Brar's Fourth Amendment Claim is Barred by *Stone v. Powell*

As in Brar's '790 case, even assuming all of the Wisconsin courts were incorrect in

their analysis of his suppression motion, the state contends that is still not enough to entitle

Brar to federal habeas relief in the form of suppressing proof from his blood draw.   Under

*Stone v. Powell*, 428 U.S. 465 (1976), litigants generally cannot relitigate motions to

suppress in habeas proceedings.   In *Stone*, the Supreme Court determined that relief under

the exclusionary rule is generally unavailable in habeas proceedings because the costs of

applying the rule outweigh its prophylactic benefits.   *Id.* at 493–94.   A narrow exception

arises only "when the State has failed to provide the habeas petitioner 'an opportunity for

full and fair litigation of a Fourth Amendment claim.'" *Wallace v. Kato*, 549 U.S. 384, 395

n.5 (2007) (quoting *Stone*, 428 U.S. at 482).   A criminal defendant receives a full and fair

opportunity to litigate if:   (1) he has clearly informed the state court of the factual basis

for the claim; (2) the state court carefully and thoroughly analyzed the facts; and (3) the

court applied the proper constitutional case law to the facts.   *Hampton v. Wyant*, 296 F.3d

10

560, 563 (7th Cir. 2002) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)).

As to the third requirement in particular, all the "state has to do is look to the appropriate body of decisional law" and "take seriously its obligation to adjudicate claims under the fourth amendment." *Id.* at 563-64. For that reason, an error by the court is generally not enough when the petitioner had a full and fair opportunity to litigate the Fourth Amendment challenge on appeal. *Monroe v. Davis*, 712 F.3d 1106, 1115-16 (7th Cir. 2013). While Brar maintains that this exception applies because the Wisconsin courts failed to consider the facts and ignored the Supreme Court's guidance, that characterization does not accurately reflect how either court analyzed his claim.

At the circuit court level, Brar's counsel raised the suppression issue and pressed for Dr. Mendoza's appearance. The court then held two separate hearings, received testimony from Heimann and Klock, and the parties submitted briefs. Brar contends that the circuit court's handling of the motion failed to consider the facts and apply the proper constitutional standard. However, the record of the circuit court's actual handling of the motion to suppress supports neither of these contentions. To the contrary, the court gave Brar multiple opportunities to develop the facts and arguments related to the reasonableness of the blood draw; in the end, the court was simply not persuaded that the blood draw was unreasonable, even in light of (or perhaps because of) Brar's dubious testimony about his anemia, nor was the court persuaded that Dr. Mendoza's testimony would contribute to his arguments in support of the motion to suppress.

Further, Brar was allowed to litigate his claim fully and fairly on appeal.   Through counsel, Brar raised his concern that the circuit court's analysis did not apply *Schmerber* properly, paying particular attention to the court's conclusion that Brar had not shown that he was exposed to any health or safety risks.   The Wisconsin Court of Appeals did not ignore those concerns; instead, after the Wisconsin Supreme Court issued the decision in *Kozel*, it gave the state and Brar the opportunity to brief the applicability of that decision, and was ultimately persuaded that *Kozel* controlled in Brar's circumstances because of the similarity of the fact patterns and law between the two cases.

Brar now claims that the Wisconsin Court of Appeals' conclusion that *Kozel* controlled his circumstances ignored (1) his evidence of the specific risks he faced associated with his anemia and (2) the relevant decisions of the United States Supreme Court.   However, Brar's real concern with the *Kozel* decision (and the Wisconsin Court of Appeals' reliance on it in his appeal) is not whether the Wisconsin Supreme Court considered *Schmerber* in issuing that decision, but that the court applied that decision and other U.S. Supreme Court precedent *incorrectly*.   Whether the state courts erred is not the question before this court, however, and Brar does not (and cannot) deny that he was afforded the *opportunity* to distinguish between his own circumstances and those before the Wisconsin Supreme Court in *Kozel*.

Nonetheless, Brar maintains that the Wisconsin Court of Appeals applied the wrong standard in concluding that the blood draw was reasonable apparently because it made an after-the-fact observation that the blood draw had not caused Brar to suffer, thus somehow failing to consider the potential *risk* of infection and pain.   In particular, Brar's position is

that it was the state's burden to establish that the room in which his blood was drawn met some type of cleanliness, and he maintains that Klock's testimony did not establish that the room was clean, despite his comparison to a hospital blood draw, ignoring that Brar himself raised this argument in his briefing before the court of appeals; indeed, expressly, arguing that the environment in which Brar's blood was drawn was a "far cry" from the hospital settings the Wisconsin Supreme Court addressed with respect to involuntary blood draws in *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), and the Supreme Court addressed in *Schmerber*.   (Brar App. Br. (dkt. #16-2) 37.)[3]

Finally, Brar faults the Wisconsin Court of Appeals for failing to analyze his circumstances in light of the Supreme Court's decisions in:  *Birchfield*, 136 S. Ct. 2160 (recognizing that where there are reasonable alternative tests, the use of a blood test may be less reasonable); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989) (recognizing the "substantial" invasion of privacy associated with blood draws); and *Missouri v. McNeely*, 569 U.S. 141 (2013) (refusing to recognize a *per se* exigency in the natural dissipation of alcohol from an arrestee's bloodstream, reinforcing the" totality of the circumstances" analysis).   True, the Wisconsin Supreme Court's decision in *Kozel,* on which the Wisconsin Court of Appeals relied here, did not expressly factor in the guidance from *Birchfield* that courts should consider the availability of less intrusive alternatives into

---

[3]  **In** resolving Brar's appeal the Wisconsin Court of Appeals' decision did not discuss these decisions in substantial detail, finding that *Kozel* controlled, but the court did reference *Kozel's* application of the *Schmerber* standard, before then explicitly finding no basis to distinguish the cleanliness question, since the blood draws in *Kozel* and in this case literally took place in the *same* room.   *Brar*, No. 2015AP2582-CR, dkt. #16-5, at 4.   Again, while Brar believes the court was wrong, there is no basis to conclude that the Wisconsin Court of Appeals failed to consider Brar's particular set of circumstances.

its consideration of a blood draw's reasonableness, and this was a failure that the dissenting opinion pointed out. *See Kozel*, 373 Wis. 2d 1 ¶ 92 (Bradley, J., dissenting). However, Brar's arguments on appeal did not rely on *Skinner* and *McNeely* in any material level of detail, and he only cited *Birchfield* in his reply brief to the Wisconsin Court of Appeals.[4]

Even if Brar had argued that *Birchfield* afforded him relief in a more robust manner, he does not now explain how the Wisconsin Court of Appeals' failure to discuss any of these U.S. Supreme Court decisions demonstrates a failure by Wisconsin courts to analyze his arguments about the reasonableness of the blood draw fully in light of all of the circumstances, as required by *Schmerber*. *See Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (state court failure to consider intervening factors in determining the lawfulness of a confession did not deprive defendant of a full and fair opportunity to present his claim); *Hampton*, 296 F.3d at 564 (noting that a judge's failure to analyze case law not relied on by the parties does not establish a deprivation of a full and fair opportunity to litigate).

At bottom, in considering whether a petitioner received a full and fair opportunity to litigate his claim, this court's obligation is to give "*some* attention to how the state court dealt with the merits . . . But not *too* much attention." *Monroe*, 712 F.3d at 1114 (citing *Cabrera*, 324 F.3d at 531-32; *Hampton*, 296 F.3d at 563-64). As already discussed, Brar does not contend that Wisconsin courts ignored the issues he raised or refused to consider them; instead, the thrust of his arguments is that those courts came to the wrong conclusion

---

[4] In fairness, it is more understandable that Brar did not raise *Birchfield* in his initial brief because the U.S. Supreme Court only issued that decision on June 23, 2016, after Brar had submitted his brief to the Wisconsin Court of Appeals (*see* dkt. #16-2). Still, Brar did not develop an argument as to the applicability of the *Birchfield* decision to his circumstances even when he had the opportunity to do so.

in evaluating the reasonableness of the blood draw.   However, the fact remains that Brar was afforded a full and fair opportunity to make those arguments before both the Sauk County Circuit Court and the Wisconsin Court of Appeals, and Brar has not pointed to any misstatement of the facts or law undermining those court's having given serious consideration of the reasonableness of his blood draw.   *See Hampton*, 296 F.3d at 564 ("[A] blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.").   As such, the court cannot conclude that the Wisconsin courts conducted the type of "sham" analysis that the Seventh Circuit anticipated would deprive a petitioner of a full and fair opportunity to litigate a Fourth Amendment claim. *See Monroe*, 712 F.3d at 1114 ("Our role is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure ourselves that the court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision.") (citations omitted).   Accordingly, the narrow exception to *Stone* does not apply here, and the court cannot reach the merits of Brar's Fourth Amendment challenge.

## II.    Brar's Fourteenth Amendment Ground for Relief is Procedurally Defaulted

The state also asserts that Brar procedurally defaulted his Fourteenth Amendment claim because he failed to raise it in the Wisconsin courts.   In determining whether a habeas petitioner fairly presented a federal claim to state courts, the court considers four factors: (1) whether the petitioner relied on federal cases engaging in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis

to similar facts; (3) whether the petitioner framed the claim such that it calls to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts within the mainstream of constitutional litigation.   *See Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).   Moreover, in deciding whether those factors are satisfied, federal courts are admonished to avoid "hypertechnicality" in deciding whether habeas petitioners adequately raised their constitutional claims in the state courts.   *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992).   "Mere variations in the same claim rather than a different legal theory will not preclude exhaustion."   *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980).

Unfortunately for Brar, his arguments before the Wisconsin courts do not satisfy any of the four possible methods of satisfying the fair presentment requirement with respect to a Fourteenths Amendment due process claim.   The first two factors are non-starters:   Brar did not invoke any principles from federal or state cases engaging in a Fourteenth Amendment due process analysis; instead, Brar's focus on Wis. Stat. § 343.305(5)(b), case law interpreting that statute, and Fourth Amendment cases.

As for the third factor, Brar's articulation and development of his claim on appeal did not suggest that he was pursuing relief based on a violation of his due process rights. In particular, Brar did not suggest *at any point* that the exclusion of Dr. Mendoza's testimony in particular deprived him of his due process rights.   Rather, Brar's focus in his briefing was that, absent Dr. Mendoza's testimony, the circuit court did not have sufficient evidence to deny the motion to suppress.   (*See* dkt. #16-2, at 22; dkt. #16-6, at 26-27.) In fact, Brar's *only* reference to the term "due process" appeared in his reply brief on appeal.

16

(*See* dkt. #16-4, at 14-15.)   And even in that portion of his reply brief, Brar was responding to the *state's argument* that suppression of the blood test as evidence was not an appropriate remedy, citing Wisconsin Court of Appeals' cases distinguishing between instances in which suppression is the only remedy, and those when suppression is not.

Indeed, the entirety of the discussion related to the *remedy* Brar was seeking.   Such a tangential reference to the notion of due process is insufficient for Brar to satisfy the fair presentment argument.   *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2011) ("A mere 'passing reference' to a constitutional issue certainly does not suffice.") (citation omitted).   This is particularly true with respect to procedural due process claims.   *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."); *Verdin*, 972 F.2d at 1475 (because due process claims are "particularly indistinct" and overlap with state claims, defendant must do more than refer vaguely to "due process" or "denial of fair trial" to fairly present constitutional due process claim to state court).   Accordingly, Brar's arguments on appeal did not sufficiently call to mind his due process rights to deem this claim fairly presented.

The fourth factor analysis fails along the same lines.   Whether a set of facts falls "within the mainstream of constitutional litigation" depends on whether the fact pattern is "'so commonly thought to involve constitutional constraints' that the constitutional basis of the claim is undeniably obvious."   *Wilson*, 243 F.3d at 328 (quoting *Verdin*, 972 F.3d at 1475).   Brar's suppressions arguments, and arguments in opposition to Dr. Mendoza's motion to quash, consistently related to how his testimony bore on the outcome

of the motion to suppress, and thus, Brar only invoked Fourth Amendment principles. Again, in particular, Brar never framed Dr. Mendoza's testimony as necessary to achieve fundamental fairness, and the decision to quash a subpoena is not the type of fact pattern that calls to mind a defendant's due process rights.   Rather, the exclusion of Dr. Mendoza relates directly to the courts' consideration of the overall reasonableness of the blood draw under the Fourth Amendment.   Since Brar did not fairly present his due process claim to the Wisconsin Court of Appeals, and the Wisconsin Supreme Court denied review, he may not do so now.   *See State v. Witkowski*, 163 Wis. 2d 985, 473 N.W.2d 512, 514 (Ct. App. 1991) ("A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue.").[5]

Nonetheless, Brar notes that even assuming he failed to raise his due process claim in the Wisconsin courts, his failure to do so may be excused if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   "Cause" for the default means "that some objective factor" prevented compliance with the state's procedural rules.   *Id.* at 753. "Prejudice" means that the alleged violations "worked to [the petitioner's] *actual* and substantial disadvantage," which infected his entire proceeding with "error of

---

[5]   To the extent Brar would suggest his petition for review by the Wisconsin Supreme Court was sufficient to invoke his due process claim, "it was too late to preserve the claim for habeas review," since "[p]resenting a federal claim for the first time in a petition for discretionary review by a state's highest court will not satisfy the fair presentment requirement."   *Wilson*, 243 F.3d at 328 (citations omitted).

constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (original emphasis).

Brar's arguments along these lines are overly vague and do not establish either requirement, nor has he submitted evidence that he is actually innocent.  "To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him asserting his federal claim in state court." *Perruquet*, 390 F.3d at 514-15. Brar makes no effort to point to any barrier to him developing his Fourteenth Amendment claim in state court.   Instead, he simply reargues that he extensively litigated the improper quashing of the subpoena.  This argument misses the mark altogether:  Brar has not explained *why* he failed to identify the Fourteenth Amendment's due process clause as a basis to challenge the exclusion of Dr. Mendoza's testimony.

Equally problematic, Brar's prejudice argument relies solely on his speculation as to what information Dr. Mendoza would have provided if he testified.   His position is that the ability to cross-examine Dr. Mendoza would have allowed him to challenge the state's position that Dr. Mendoza monitored the blood draws at the Sauk County Jail.   However, Brar assumes that Dr. Mendoza would have testified that he was not actually supervising the EMT's that worked for them, yet he has not shown that such testimony was even a possibility.   More importantly, he has failed to explain how that testimony would have refuted the circuit court's alternative finding that Klock qualified as "another type of medical professional trained to perform blood draws" based on his training as an EMT.

Finally, Brar has not submitted *any* argument or evidence suggesting his innocence. To the contrary, every suggestion in this case shows his effort, however, legitimate under

the law, "to get off on a technicality."   As such, Brar's failure to exhaust his Fourteenth Amendment due process claim cannot be excused, and this ground for relief must also fail.

## III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.   A certificate of appealability will not issue unless Brar makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Although the rule allows the court to ask Brar to submit argument on whether a certificate should issue, it is not necessary to do so in this case.   Because reasonable jurists would not debate whether Brar is precluded from relitigating his Fourth Amendment challenge by *Stone*, or whether Brar defaulted on his Fourteenth Amendment ground for relief, the court will not issue him a certificate of appealability.   Finally, for the same reason, the court will lift the stay of the execution of Brar's sentence 21 days from the date of this order, unless a further stay is obtained from the Seventh Circuit Court of Appeals.

ORDER

IT IS ORDERED that:

1)  Petitioner Navdeed Brar's petition under 28 U.S.C. § 2254 DENIED.

2)  No certificate of appealability will issue.

3)  The stay of Brar's sentence will continue for 21 days from the date of this order.

Entered this 7th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge